OPINION. Kern, Judge: (1) As to the deficiency in taxes determined for the year 1935, its assessment is barred by the statute of limitations unless fraud with intent to evade tax can be shown. Consequently, it is incumbent upon respondent to prove fraud in that year in order to prevail not only as to the penalty, but also as to the removal of the bar of the statute of limitations from the deficiency itself. With reference to the deficiencies in taxes for other years herein involved, the burden of proof is upon petitioner, although the burden, of course, is upon respondent as to the fraud penalties. Petitioner, placing undue reliance upon Helvering v. Taylor, 293 U. S. 507, seeks to have us consider the first issue as though the burden of proof were upon respondent for all purposes for all years before us. We disagree with this contention. There is no evidence that respondent’s determination was “without rational foundation.” Petitioner has offered little evidence. Moreover, motions to strike a substantial portion of the evidence adduced by respondent’s witnesses were made by petitioner, and they have been disposed of by appropriate order. These motions were based upon the so-called “dead man’s” statute.[1] This type of statute, and the one by which we are controlled, declares that the testimony of the surviving party to a transaction is inadmissible in actions between the survivor and the personal representative of the deceased. The testimony here sought to be stricken was given not by parties to this proceeding, and not by anyone who can be said to have had any real interest in the outcome of this controversy. Petitioner seeks to demonstrate that one witness, Bioff, may stand to gain some indefinite advantage, as a tax case in which he is involved is still pending. That in itself would be insufficient to warrant a striking of his testimony. Cush v. Allen, (App. D. C.), 13 Fed. (2d) 299. Moreover, his testimony was of such a nature as hardly to be considered of any benefit to him. Petitioner’s motions to strike evidence from the record on this ground have been denied by appropriate order. It should be observed that, had we granted petitioner’s motions, respondent’s position might have been weakened as to the year 1935, but would have been strengthened as to the years 1936 to 1940. In that event, it would have been incumbent upon us to uphold respondent’s determination as to the latter years in the full amounts of the deficiencies determined; whereas, by considering, the testimony adduced, we believe that it supports the position we take that the deficiencies determined were too high. We have carefully weighed the evidence presented, with full recognition of the credibility of each of the witnesses and of the other essential factors present in a proceeding with such a basically unsavory background as we have here. Respondent has established convincingly, we believe, decedent’s association with Bioff and Browne in their scheme of procuring substantial sums of money from various members of the motion picture industry. Furthermore, it conclusively appears that at least the amounts found by us were so received by these associates during each of the years herein involved. The only doubtful factor in the proceeding is the precise amount received and retained by Nitto personally during each of the years. There can be no question but that he received some amounts in all the taxable years, and that whatever amounts he so received he failed to report for income tax purposes. It is our view, however, that the absence of precise proof as to the exact amount received by Nitto is not fatal to respondent, even as to the year 1935.[2] Although the precise amount obtained by decedent can not now be ascertained, we do know that he did receive and did personally retain some of the proceeds. Any other conclusion would be beyond the pale of reasonable belief. Having resolved whatever doubts we may entertain against the party having the burden of proof, we have determined the amounts set out in our findings as the amounts so received by decedent. Cf. Cohan v. Commissioner (CCA-2), 39 Fed. (2d) 540. Petitioner urges that, even if decedent did receive funds from this venture during these years, such proceeds did not represent taxable income under the doctrine of Commissioner v. Wilcox, 327 U. S. 404, holding that embezzled funds are not taxable income. In that case, unlike here, the funds were misappropriated without the knowledge or participation of the owner and, also, the funds came to the party who was sought to be taxed, not by the “conscious act” of the owner “in response to a claim for an agreed service by the party to whom they were paid.” Wilcox v. Commissioner (CCA-9), 148 Fed. (2d) 933, 935; affd., 327 U. S. 404. The Wilcox case does not stand for the proposition that all funds “fraudulently or illegally acquired” are nontaxable. Ibid. Wallace 3. Petit, 10 T. C. 1253. Even if we were to adopt petitioner’s suggestion and denominate these various receipts as “extortion,”[3] the result would not be otherwise. Although the payors might have had the right to recover the funds so paid over, at least until such recovery, imposition of an income tax on the payees would not be improper. See Akers v. Scofield (CCA-5), 167 Fed. (2d) 718; certiorari denied, 335 U. S. 823. See also Wilcox v. Commissioner, supra; Humphreys v. Commissioner (CCA-7), 125 Fed. (2d) 340; certiorari denied, 317 U. S. 637; Caldwell v. Commissioner (CCA-5), 135 Fed. (2d) 488; Richard Law, 2 T. C. 623; Johnson v. United States, 318 U. S. 189; Note, 58 Yale L. Journal 955, 962, et seq.; Note, 166 A. L. R. 891. Moreover, we discern from the record that the payors knowingly and willingly paid over the funds sought to be here taxed and, in a sense, lent encouragement to, and participated with full knowledge of the facts in, the activities of Browne and Bioff and the Nitto group. We fail to see how on the facts before us the doctrine of the Wilcox case can apply. Wallace H. Petit, supra. (2) The second issue has in substance been resolved by the stipulation of the parties; the facts as stipulated appear in our findings of fact. The necessary computations can be made under Kule 50. (3) Petitioner does not strenuously press the issue as to the proper year of reporting the dividends from the Gables Eacing Association, Inc.; and taxwise it is observed, upon brief, that it may even result in lesser tax if respondent’s view is upheld. The facts bearing upon this issue have been stipulated and are set out in our findings. We are not informed as to whether the notes were negotiable or whether they were demand or time notes. Neither is there evidence from which we can determine their fair market value, if any, in 1938. It is our conclusion that respondent’s determination should be upheld, and that the dividends should properly have been reported in 1939 and not in 1938. (4) On the authority of H. R. Smith, 10 T. C. 398; affd. (CA-5), 173 Fed. (2d) 470, and cases therein cited, this issue must be decided in petitioner’s favor. In that case it was recognized that the sale of a partnership interest is the sale of a capital asset, and any gain realizable therefrom is properly reportable as capital gain. City Bank Farmers Trust Co. v. United States (Ct. Cls.), 47 Fed. Supp. 98, upon which respondent seeks to place much reliance, was expressly rejected in the Smith case, and, as in that case, we decline to follow it here. (5) As to the fraud penalties, the burden of proof is upon respondent. “Because direct and clear-cut proof of fraud is seldom available, it must be established by a full consideration of the records and testimony offered, the appearance and manner of the witnesses, conduct of the taxpayer, and all conditions and circumstances surrounding the transactions which produced the disputed income.” Wallace H. Petit, supra, at page 1257; M. Rea Gano, 19 B. T. A. 518. Much of the obscurity which beclouds this case, no doubt, results from the nature of the transactions that produced the income, as well as from decedent’s failure to keep proper records or other sources of information that would cast additional light on the problems that confront us. Through petitioner’s own witnesses it has been established that decedent did not report any income he received from his operations with Browne and Bioff. We have already held that decedent did receive substantial income from such sources. The receipt of such amounts of income over many years and the unexplained failure to report any are significant in determining the existence of fraud. Frank A. Weinstein, 33 B. T. A. 105; Frank A. Maddox, 40 B. T. A. 572; affd. (CCA-3), 114 Fed. (2d) 548. Although other motives may also have induced decedent not to disclose this income, we are convinced from the entire record that fraud, with intent to evade tax, was also present. The receipts were of such magnitude and derived from such sources as to preclude the inference that they were omitted due to oversight. No argument has been made as to the survival of the fraud assessment. Such action does survive decedent’s death. Estate of Charles Louis Reimer, 12 T. C. 913. (6) Petitioner Annette Caravetta Nitto’s individual transferee liability, as this issue is narrowed by the parties, turns solely on the question of whether the amounts of the deficiencies and penalties to be determined against decedent’s estate under Rule 50 exceed the amount of assets that remained with decedent after each of the transfers to his wife. If, upon the recomputation of decedent’s taxes and penalties for the years before us, the aggregate liabilities do not exceed the amount of such retained assets, then petitioner is not individually liable as transferee. In any event, it is conceded by respondent that her transferee liability can not exceed the amount of the assets transferred to her, namely, $125,000. (7) The liability of petitioner Annette Caravetta Nitto as guardian of the minor, Joseph Nitto, is our final issue. The law relating to joint tenancies and transferee liability does not appear to be too well settled. See and compare Myrtle M. Irvine, 36 B. T. A. 653; reversed (CCA-8), 99 Fed. (2d) 265; Tooley v. Commissioner (CCA-9), 121 Fed. (2d) 350, reversing 42 B. T. A. 977, which had not considered this point; and Christine D. Muller, 10 T. C. 678. But even though we consider the crucial transfer to be the purchase by decedent of the bonds in May 1942, and even though -we judge the issue in the light of our opinion in the Irvine case, which appears to be most favorable to respondent, we are not able to decide the question for him. Respondent has failed to meet the burden which he has in a transferee proceeding and has not demonstrated the extent of decedent’s estate immediately prior to the gift of the bonds to his son in 1942, a necessary disclosure to establish transferee liability on the assumption that this gift was the crucial transfer. A comparable showing appears to have been a strong operative fact in the Irvine case (see page 658 of the opinion). By reason of this lack of proof, there can be no holding of transferee liability against petitioner as guardian of the minor. Reviewed by the Court. Decision will be entered under Rule 50. The D. C. Code, car. 14-302, provides: “If one of the original parties to a transaction or contract has, since the date thereof, died or become insane or otherwise incapable of testifying in relation thereto, the other party thereto shall not be allowed to testify as to any transaction with or declaration or admission of the said deceased or otherwise incapable party in any action between said other party or any person claiming under him and the executors, administrators, trustees, heirs, devisees, assignees, committee, or other person legally representing the deceased or otherwise incapable party unless he be first called upon to testify in relation to said transaction or declaration or admission by the other party, or the opposite party first testify in relation to the same, or unless the transaction or contract was made or had with an agent of the said deceased or otherwise incapable party, and said agent testifies in relation thereto.” (See sec. 1111, I. R. C.) As will hereinafter appear, it is our opinion that fraud with intent to evade tas has been established for all years. Cf. Hernstein v. Paramount Pictures, Inc., 37 N. Y. S. (2d) 404, 412, 415; affd., 41 N. Y. s. (2d) 210; 292 N. Y. 468; 55 N. E. (2d) 740.