Joseph S. Fay v. Commissioner. James Bove v. Commissioner.
Joseph S. Fay v. Commissioner
Docket Nos. 8730, 8755.
United States Tax Court
1953 Tax Ct. Memo LEXIS 407; 12 T.C.M. (CCH) 14; T.C.M. (RIA) 53012; January 13, 1953
*407 On the basis of the facts presented, held that (1) the respondent did not err in determining fraud penalties against petitioner Bove, (2) since petitioner Bove failed to put in an appearance or introduce any evidence, the deficiencies determined against him are sustained subject to adjustments admitted by respondent, (3) respondent erred in determining fraud penalties against petitioner Fay, and (4) petitioner Fay did not receive unreported net taxable income in any of the taxable years in question. Bernard J. Long, Esq., and Robert L. Hood, Esq., for petitioner in Docket No. 8730. No appearance for petitioner in Docket No. 8755. Francis X. Gallagher, Esq., for the respondent. HILL Memorandum Findings of Fact and Opinion Respondent determined deficiencies in income tax for *408 the taxable years 1938 through 1943, plus fraud penalties for each of the years 1938 through 1942, against the petitioner Joseph S. Fay as follows: Year
Deficiency
50% Penalty
1938
$88,454.96
$44,227.48
1939
66,571.28
33,285.64
1940
55,152.97
27,576.48
1941
77,398.25
38,699.12
1942
78,838.66
39,419.33
1943
4,667.35 A jeopardy assessment with respect to the deficiencies was levied by the respondent on March 21, 1945. Respondent determined deficiencies in income tax for the taxable years 1938 through 1942, plus fraud penalties for each of these years, against the petitioner James Bove as follows: Year
Deficiency
50% Penalty
1938
$97,435.58
$48,780.78
1939
71,577.24
35,853.09
1940
55,724.16
27,862.08
1941
57,832.33
28,916.16
1942
10,204.76
5,102.38 A jeopardy assessment with respect to these deficiencies was levied by the respondent on March 21, 1945. These proceedings were consolidated for hearing and decision. The deficiencies against petitioner Joseph S. Fay were based upon the alleged receipt of additional unreported income during each of the years in question, including in the years 1942 and 1943 amounts *409 representing the difference between funds paid to Fay by his local union employer as reimbursement to cover expenses incurred on behalf of this union and the total amount which respondent has determined was actually expended on behalf of the union in each such year. (Another adjustment made by respondent is merely mathematical and concerns the portion of medical expenses which petitioner Fay may deduct in the year 1943. This adjustment depends solely on a determination with respect to the other adjustments resulting in the 1943 deficiency.) The basis for the respondent's determination of the deficiencies against petitioner James Bove was the alleged receipt of additional unreported income in each of the years in question, including unreported income from dividends for the year 1941. Petitioner James Bove does not allege as error respondent's adjustment as to the unreported 1941 dividends, which were in the amount of $1,368.48, but denies receipt of the other alleged items of unreported income. Petitioner Joseph S. Fay alleges as error all of the adjustments made by the respondent in arriving at the deficiencies. In his answer to the petition of James Bove, the respondent alleged *410 fraud because of Bove's failure to report the alleged additional income, including the dividends, and the question of fraud was placed in issue by Bove's reply denying the allegations of fraud. In his original answer respondent alleged fraud on the part of petitioner Fay for his failure to report for the years 1938 through 1942 all of the alleged additional income, which income was the basis for the deficiencies determined for these years; however, upon motion of petitioner Fay for an order for a further and better statement of the facts upon which the respondent relied to sustain his allegations of fraud, the respondent in an amended answer alleged fraud with respect to the alleged additional income, exclusive of that portion of the reimbursement funds which the respondent determined constituted additional income in 1942. The question of fraud was placed in issue by petitioner Fay's reply denying respondent's allegation of fraud. Accordingly, there are presented for our decision here several interrelated issues with respect to both petitioners. One of these issues concerns the statute of limitations under sections 275 (c) and 276 (a) of the Internal Revenue Code *411 , and the determination of this issue is dependent upon the determination of the other issues, namely, questions of fact whether petitioners Fay and Bove received additional unreported income during the taxable years in question and whether either or both filed fraudulent returns for any of the years in question. Petitioner Bove did not make an appearance at the hearing, was not represented by counsel, and did not introduce any evidence on his behalf. Findings of Fact At the time of filing his petition, petitioner Joseph S. Fay resided in Newark, New Jersey. He filed his income tax returns for the years here in question, 1938 through 1943, on the calendar year basis with the Collector of Internal Revenue for the Fifth District of New Jersey. His returns for each of the years in question were filed on the following dates: Taxable Year
Covered
by Return
Date of Filing
1938
April 15, 1939
1939
May 15, 1940
1940
March 15, 1941
1941
May 15, 1942
1942
March 15, 1943
1943
March 15, 1944
Petitioner James Bove resided in Long Island, New York, at the time he filed his petition herein. His income tax returns for the taxable years in question were filed on *412 the calendar year basis with the Collector of Internal Revenue for the Third District of New York, and all of his returns for these years were timely filed, except that for the year 1941 which was filed one day late. During all of the years here in question petitioner Fay reported income from several sources. The principal reported source was earnings and dividends from a corporation, The International Excavating Co., Inc., Newark, New Jersey. Another reported source was his salary as an employee of the International Union of Operating Engineers, Washington, D.C., (hereinafter referred to as the International Union). A third reported source was salary as an employee of Local 825 of the International Union of Operating Engineers (hereinafter referred to as Local 825). Petitioner Fay's services for the unions consisted mainly of liaison work between the unions and employers or contractors; he was a sort of contract man and one of his most important functions was the negotiation of labor contracts. During all of the taxable years here in question petitioner Bove was a salaried employee of Local 60 of the International Hod Carriers, Bricklayers and Common Laborers Union (hereinafter *413 referred to as Local 60). Like Fay, Bove also negotiated labor contracts in the course of his employment. In 1937 or shortly thereafter, B. Perini & Sons, Inc., a Massachusetts construction firm, was awarded a contract by the New York Port Authority to construct approaches to the Lincoln Tunnel on the New Jersey side of the Hudson River at Union City. This firm received the award despite the protests of petitioner Bove, who objected because the Perini Company had had a reputation as an employer of non-union labor. Since the site where the work was to be performed by the Perini Company was within the jurisdiction of Local 60, represented by Bove, the latter contacted Louis R. Perini of this firm and informed him that he was writing a labor contract to cover the common laborers at the Union City site. They arranged a meeting with Fay, which was held at Fay's office, and at this meeting Bove informed Perini that he would write the labor contract and see that the job would run smoothly as far as labor was concerned and help the Perini Company get permits and straighten out any difficulties that might arise in Jersey City in consideration for the payment of $50,000. Perini agreed and *414 paid the $50,000 over a two-year period, 1937 through 1938. An undetermined substantial portion of the $50,000 was paid to Fay in 1937. In the year 1938 the State of New York commenced the construction of the Delaware Aqueduct project, which was a longdistance underground pipe line designed to carry water to the City of New York from a series of reservoirs in upper New York State west of the Hudson River. Among those companies which were awarded contracts on this project were B. Perini & Sons, Inc. (contract awarded in 1938), Seaboard Construction Corporation, the company in which B. Perini & Sons, Inc. had an interest, (contract awarded in 1938), Mason & Hanger Co. (contract awarded in 1939), George M. Brewster & Son, Inc. (subcontract obtained in 1939, separate contract awarded in 1941), Walsh Construction Company (contract awarded in 1939), and Associated Contractors, an organization composed of Walsh Construction Company, J. F. Shea Company and Henry J. Kaiser Company (contract awarded in July or August of 1938). The site of the Delaware Aqueduct project was under the jurisdiction of Local 60, Bove's union. Petitioner Fay's local also had laborers on this job. Shortly after *415 the awards of contracts were made to Seaboard Construction Corporation and B. Perini & Sons, Inc., Louis R. Perini, as a representative of these two companies, attended a meeting in a New York City hotel, at which Bove was present. Bove informed Perini that he wanted $125,000 from the Seaboard Company and $50,000 from the Perini Company to see to it that these companies did not have any labor troubles and that their jobs would operate smoothly. Perini informed Bove that he would pass this information on to the president of Seaboard Company and, because he thought the amount requested from the Perini Company to be unfair, Perini, thereafter discussed this matter with Fay and Bove together, Perini agreed to pay $25,000 on behalf of the Perini Company. He thereafter paid this amount to Bove in six or seven payments, the first of which was paid in 1938. After Associated Contractors received their award on the aqueduct project in 1938, a meeting was held at the New York Athletic Club. This meeting was attended by petitioners Fay and Bove and John S. Macdonald and Thomas J. Walsh of Associated Contractors. During the course of their conversation petitioners Bove and Fay stated that they *416 would see to it that the jobs would go smoothly and that they would help the contractors in any way possible for the payment of $225,000. One or the other stated that there could be labor difficulties and that if the contractors were friendly such difficulties might be obviated. Representatives of Associated Contractors finally agreed to pay $150,000. About a week later Bove demanded and received from this group a payment of $50,000. In 1939, shortly after the Walsh Construction Company received its award on the aqueduct project, another meeting was held at the Athletic Club and this meeting was attended by Fay and Bove and by three representatives of the Walsh Company, Walsh, president, Macdonald, chief engineer, and David Small. These men were also the principal representatives of Associated Contractors. Fay and Bove appeared to be well in accord in their request for cash payments similar to those agreed upon with respect to Associated Contractors, and at this meeting the representatives of Walsh Construction Company agreed to pay $75,000. This group of contractors paid to Fay and Bove on behalf of the Associated and Walsh companies a total of $212,000 over a period of several *417 years. All of these payments were made to Bove at his request, with the exception of one $30,000 payment made to Fay in 1942. This payment was made to Fay by Macdonald and was immediately turned over by Fay to representatives of the labor group in Westchester County, which group had incurred expenses in counterpicketing activities at the site of the work performed by Associated Contractors and Walsh Construction Company. Such counterpicketing was carried on to counteract the picketing and disturbances caused by a hostile union which had an unrecognized claim to jurisdiction over the work being performed on the aqueduct project. After Mason & Hanger Co. was awarded its contract on the aqueduct project in 1939, William J. Brewster, head of George M. Brewster & Son, Inc., a subcontractor on the Mason & Hanger job, met with Fay and Bove at the Commodore Hotel in New York. A discussion was had with respect to handling the labor relations for Mason & Hanger and a figure of $12,000 a year was mentioned. Mason & Hanger authorized Brewster to make an initial payment of $12,000. Accordingly, Brewster made a payment of this amount in 1939 on behalf of Mason & Hanger to a messenger sent to him *418 by Bove. In 1940 Fay telephoned Miles I. Killmer, vice-president of Mason & Hanger. As a result of this telephone conversation, Killmer made an appointment to meet Fay at the Mason & Hanger office in New York City. Fay did not appear. Bove appeared and received the payment of $12,000. Substantially the same procedure was followed in 1941 when Killmer made another $12,000 payment to Bove. After Brewster had discussed with Fay and Bove the handling of the labor situation for Mason & Hanger, Brewster agreed to pay Fay approximately $5,000 a year to handle the Brewster Company's labor relations. This was with respect to the Brewster subcontract on a portion of the aqueduct project known as the Lackawack job. When the Brewster Company secured the contract on its own right at Neversink on the aqueduct project in 1941, Brewster discussed making payments of $10,000 a year to Fay with respect to this job. During the period 1939 through 1942 Brewster made the following payments to Fay: $5,000 in 1939, $5,000 in 1940, $25,000 in 1941, and $10,000 in 1942. Of the $45,000 which Fay received from Brewster, $15,000 was paid over to Joseph Madden in 1941 and Madden used these funds to pay the *419 expenses of men who were used in the counterpicketing activities in and about the Brewster job. The purpose of this counterpicketing was to combat picketing and disturbances caused by the same local union which had been picketing the Associated Contractors and Walsh Construction Company sites. In the following year, 1942, Fay again paid Madden $5,000, which he had obtained from Brewster and which Madden likewise used in paying expenses of men used in counterpicketing activities during that year. The remaining $25,000 which Fay received from Brewster was deposited with Richard Nolan, an employee of the International Union who acted as a secretary for Fay, and Nolan used all of these funds to meet the expenses of entertaining various labor leaders of unions whose members were employees on the Brewster jobs during the years 1939 through early 1943. Such entertainment was instrumental in creating good will and harmony among the union men employed on these jobs. In each of the years 1938 through 1942 Fay received from the New York Trap Rock Corporation $2,000 per year for services performed by him on behalf of this company, which Fay expended to meet incidental expenses incurred in his *420 efforts to influence the state government to divert gasoline tax refunds from dole uses to the construction of roads, which purpose would benefit both this corporation and Fay's labor union. Under his contract of employment by Local 825, the expenses which Fay incurred on behalf of this employer were met under a reimbursement system, whereby he was to receive approximately $5,000 a year to be paid weekly. When his expenditures exceeded this amount, the local, although not previously under obligation to do so, did in some instances reimburse him for any such additional expenditures. In the years 1942 and 1943 Fay presented to the financial secretary of Local 825 a list of the expenses which he had incurred on behalf of the union. At the time these expense sheets were presented to the financial secretary, John A. Lawless, he accepted them as expenses actually incurred, and prepared summary sheets therefrom. These sheets showed petitioner's expenditures on behalf of the Local 825 to be $10,255.13 in the year 1942, which amount was in excess of the amount which Fay received as reimbursement in that year ($9,876.75), and $12,644.36 in the year 1943, which was in excess of the amount which *421 Fay received as reimbursement in that year ($11,355.77). During the taxable years here in question, petitioner Fay's tax returns were prepared by Leo Reilly, an accountant who was employed by the International Excavating Company. Fay informed Reilly as to his reimbursement agreement with his employer, Local 825, and that he was spending more money than he received. In 1940 when they were preparing Fay's 1939 income tax return Fay also informed Reilly that he had received from a contractor in 1939 money to be used for entertainment purposes with respect to the aqueduct project and that he had spent more in such entertaining than he had received. Reilly informed Fay that because he spent more than he received for this purpose he did not have to report the proceeds on his income tax return. He asked the same question in 1941 in making out the 1940 income tax return and was informed the situation was the same. During the taxable years 1939 and 1940 petitioner Fay reported the following amounts of gross income: 1939
$16,642
1940
18,251 The amounts which Fay received in the years 1938 through 1942 from contractors for services he agreed to or undertook to perform for *422 them constituted gross income. The amounts so received in 1939 and 1940 were in excess of 25 per cent of the amount of gross income reported for each such year by him in his tax returns. However, since all such sums so received were expended by him in performing services on behalf of these contractors, petitioner Fay had no unreported net income for the taxable years 1938 through 1943. For each of the taxable years 1938 to 1941, inclusive, petitioner Bove filed a false and fraudulent return. The deficiencies against petitioner Bove in each of the taxable years 1938 to 1941, inclusive, are due in part to fraud with intent on the part of the petitioner Bove to evade tax. In accordance with the concessions made by the respondent, no deficiency in petitioner Bove's income tax exists for the year 1942. In accordance with a concession made by the respondent petitioner Bove's additional unreported income for the years 1938 through 1941 is to be reduced by the following amounts: Year
Amount of Reduction
1938
$17,500
1939
2,500
1940
2,500
1941
12,500
Opinion HILL, Judge: There are several interrelated issues presented for our decision, including the questions *423 of statute of limitations and fraud, and the question whether petitioners in fact received unreported income, the basis for the deficiencies. However, since the question of the statute of limitations depends for some years solely on the question of whether or not there existed fraud with intent to evade the payment of taxes, [1] and for other years on the question of whether or not there was omitted from the returns 25 per cent of reported gross income [2] as well, and since the basis for the fraud penalties is the failure of petitioners to report alleged additional income, which is also the basis for the deficiencies, there are only two basic questions of fact which must be answered. One concerns the question of the receipt of additional alleged income and the other concerns the question of whether the alleged additional income was omitted from the petitioners' returns with the intent to evade payment of income taxes. *424 We believe that it has been established by the record in this case that petitioners Bove and Fay, acting sometimes alone and sometimes together, approached various contractors and promised them that in consideration of the contractors agreeing to pay certain sums of money over the lives of their contracts, they, petitioners Bove and Fay, would handle the contractors' labor problems and see to it that, from a labor standpoint, their jobs would run smoothly. Because of their positions as influential labor leaders and contract negotiators and because the locals which they represented in most cases had jurisdiction in the areas where the work was to be performed, petitioners were in a peculiarly advantageous position to so bargain with the contractors. While six different members of contracting firms testified on behalf of the respondent that they agreed to make such payments, their testimony as a whole appeared to be somewhat vague and indefinite as to the true nature of their agreements or understandings with the petitioners and in only one instance did a witness testify that he received a threat, which he stated was made by petitioner Bove. Aside from the legality or ethics of such *425 agreements, however, it appears clear that, despite their domination, any payments made pursuant to such agreements constitute income to the recipients. [3] In this respect we believe that petitioner Fay's contention that the contractors merely set up funds which he helped to disburse is untenable and contrary to the weight of the evidence.
Petitioner Bove failed to put in an appearance at the hearing, was not represented there by counsel, and introduced no evidence on his behalf. However, the question of fraud was properly placed in issue by the pleadings. The burden of proof with respect to such issue was upon the respondent, [4] and the record must show existence of fraud by clear and convincing evidence. [5] Furthermore, since the issue of fraud was properly raised by the pleadings, the burden of proving it remains upon the respondent despite petitioner Bove's failure to put in an appearance at the hearing.[6] We believe that this burden has been met. A copy of Bove's conviction of income tax evasion for the years 1939 through 1941 was properly introduced in evidence by the respondent, as well as other evidence *426 showing payments made to Bove by various contractors during the years 1938 through 1941. We hold that this evidence is sufficient to prove fraud. Cf. Thomas J. McLaughlin, 29 B.T.A. 247. None of the years are barred by the statute of limitations and, no proof having been introduced by Bove, we hold that he has failed to prove error in the respondent's determination and the deficiencies determined against him must stand, with such adjustments as have been admitted by respondent. With respect to petitioner Fay, there is no evidence in the record that any part of the payments received by Bove from contractors were ever paid over to or received by petitioner Fay. Furthermore, while the record established that payments were made by contractors to petitioner Fay, such payments were considerably *427 smaller in amount and fewer in number than those alleged as the basis of the deficiencies and fraud penalties. On consideration of all the evidence presented we have concluded Fay did not receive any amounts in excess of those which he admitted he received during the period of time here in question when he testified at the hearing. While such payments as Fay received constitute gross income and were of a sufficient amount to eliminate the bar of the statute of limitations for two of the years in question (1939-1940), we believe that the petitioner's evidence is sufficient to establish that all of the funds he received were expended by him in performing services on behalf of the contractors so that he received no personal gain therefrom and had no net taxable income as a result thereof in any of the taxable years. Furthermore, these payments were not included on petitioner's returns for the years in question because he was advised by the accountant who prepared his returns that inasmuch as he had expended all the funds there was no need to account for them. With respect to petitioner Fay's reimbursement arrangement between himself and his local union employer during the years 1942 *428 and 1943, the record established that the expenses which the petitioner incurred on behalf of the union were in excess of the amount he was reimbursed in each of these years so that no net taxable income resulted. From the record before us we have concluded that fraud has not been established with respect to petitioner Fay, and inasmuch as there is no additional net income for the year 1943 there is no need to make any adjustment with respect to the medical deduction taken for that year and we accordingly held that there are no deficiencies in his income tax for the years which are not barred by the statute of limitations. In Docket No. 8730, decision will be entered for petitioner. In Docket No. 8755, decision will be entered under Rule 50. Footnotes
1. SEC. 276. SAME - EXCEPTIONS. (a) False Return or No Return. - In the case of a false or fraudulent return with intent to evade tax or of a failure to file a return the tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time. ↩
2. SEC. 275. PERIOD OF LIMITATION UPON ASSESSMENT AND COLLECTION. Except as provided in section 276 - * * *
(c) Omission from Gross Income. - If the taxpayer omits from gross income an amount properly includible therein which is in excess of 25 per centum of the amount of gross income stated in the return, the tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time within 5 years after the return was filed.↩
3. Estate of Joseph Nitto, 13 T.C. 858, 866-867↩.
4. SEC. 1112. BURDEN OF PROOF IN FRAUD CASES. In any proceeding involving the issue whether the petitioner has been guilty of fraud with intent to evade tax, the burden of proof in respect of such issue shall be upon the Commissioner.↩
5. Frank A. Maddas, 40 B.T.A. 572, affirmed 114 Fed. (2d) 548↩. 6. Miller-Pocahontas Coal Co., 21 B.T.A. 1360↩.