Jefferson T. Ewing, Sr. v. Commissioner.
Ewing v. Commissioner
Docket No. 38152.
United States Tax Court
1953 Tax Ct. Memo LEXIS 63; 12 T.C.M. (CCH) 1299; T.C.M. (RIA) 53360; November 12, 1953
*63 Petitioner was a bookmaker's "commission man" between 1937 and 1947. He failed to file Federal income tax returns for 1940 through 1946, and understated his income in his 1947 return. Respondent computed petitioner's income for 1940 through 1947 by the net worth method, determined deficiencies and fraud penalties for those years, and delinquency penalties for 1940 through 1946. Petitioner only contests the fraud penalties, the deficiencies for 1946 and 1947, and the amount of the delinquency penalty for 1946. Held, the Commissioner's determination of petitioner's net income for 1946 and 1947 was excessive and should be recomputed in accordance with the amounts in our Findings of Fact. Held, further, the Commissioner has sustained his burden of proving fraud and has established that part of the deficiencies in each year was due to fraud with intent to evade the tax. Stephen E. Hamilton, Jr., Esq., for the petitioner. John D. Armstrong, Esq., for the respondent. BLACK Memorandum Findings of Fact and Opinion The Commissioner has determined that the petitioner is liable for the following income tax deficiencies and penalties: 50%
25%
Fraud
Delinquency
Year
Deficiency
Penalty
Penalty
1940
$ 44.65
$ 22.33
$ 11.16
1941
472.55
236.28
118.14
1942
826.79
413.40
206.70
1943
828.16
414.08
207.04
1944
635.50
317.75
158.88
1945
875.25
437.63
218.81
1946
7,234.09
3,617.05
1,808.53
1947
1,492.97
746.49
Petitioner contends that the Commissioner erred (1) to the extent of $6,032.59 in his determination of the 1946 deficiency and $1,508.14 in his determination of the 1946 delinquency penalty, (2)to the extent of $494.80 in his determination of the 1947 deficiency, and (3) in his determination *65 of fraud penalties for the years 1940 to 1947, inclusive. Petitioner does not contest the deficiency and delinquency penalty determinations for the years 1940 to 1945, inclusive. Findings of Fact Certain facts were stipulated and are so found. Petitioner is an individual and is a resident of Deerhurst, Delaware. He filed an income tax return for the 1947 calendar year with the Collector of Internal Revenue for the District of Delaware but filed no returns for 1940 to 1946, inclusive, the other taxable years in issue. Petitioner was 53 years old at the date of the hearing. He was married in 1921 and has two sons who were born in 1922 and 1923. Between 1917 and 1937, petitioner held a variety of unskilled jobs. His average earnings for that period were low but were counterbalanced by the fact that his living expenses were likewise low. He and his family lived in a semi-detached 6-room frame house which had no inside plumbing or running water and which he rented for what averaged $6 a month. His groceries and sundries were purchased approximately at cost from his uncle's general store. He had a telephone only since 1927, had no car, did not smoke nor drink and his only indulgences *66 were fishing and trap shooting. His widowed mother lived in the adjoining house from 1921 to 1937, and he paid her rent of $4 a month and contributed, along with his brother, to the cost of her groceries. By the beginning of 1937, petitioner had saved enough to purchase a 1936 Buick automobile and had a small sum of cash left over, the amount of which cannot be determined from the evidence. He then went to work as a "commission man" for John H. Butler, a local bookmaker. His function was to solicit and collect horse bets on horses, telephone the bets in to the bookmaker, and pay off any winning bettors. The names of the bettors were never revealed to the bookmaker and, in fact, petitioner often placed bets for his own account. This method of earning money is highly speculative and income can fluctuate between broad limits. For his services as "commission man" the arrangement finally reached was that Butler was to pay petitioner five per cent of the amount of the bets telephoned in. Petitioner paid off the winning bettors daily but settled his accounts with Butler at about one- to three-week intervals. It was never necessary for petitioner to have more than $1,500 to $2,000 on hand *67 to pay off the winning bettors for a full month, even were he not to settle with Butler for that length of time. Petitioner knew that his activities in association with Butler were illegal, but continued in them until January 31, 1947, when he was arrested by the Delaware State Police. Subsequently, on March 4, 1947, in the Common Pleas Court of New Castle County, Delaware, he was found guilty of receiving and recording bets on horse races, fined $90 and costs, and placed on parole for one year. For the remainder of 1947, the only available evidence regarding his activities indicates that he sold antiques. In addition to the aforementioned activities, petitioner worked as a shipping clerk for the San-nap-pak Mfg. Co. (Now known as the Doeskin Paper Products Corp.) in 1937 and 1938, leaving them thereafter to devote all his time to his illegal operations. His gross earnings from that job were $1,178.69 in 1937 and $1,193.90 in 1938, all of which he received except for social security deductions. Petitioner, at the same time he was working for Butler, also worked as a "commission man" for T. Bayard Wolhar, another bookmaker, for about three months in 1941. As with Butler, he received *68 five per cent of all bets telephoned in. The names of the bettors were never revealed to Wolhar. In fact, pursuant to instructions from Butler, petitioner "laid-off" some of Butler's bets with Wolhar. Wolhar paid petitioner about $500 during the short period of their association. After that, petitioner continued to telephone bets into Wolhar even though Wolhar paid him no commission and at least some of those bets were for petitioner's own account. Wolhar finally refused to accept any more bets from petitioner because they were not the kind of bets Wolhar wanted. Apparently they were either "lay-offs" or bets on winning horses. The only time petitioner's wife was employed was during 1940 and 1941, when she earned about $1,000 packing paper for the Rockland Paper Co. Petitioner filed income tax returns with the State of Delaware for the taxable years 1941 to 1946, inclusive, reporting his income as follows: Year
Income Reported
1941
$1,546.35
1942
1,280.00
1943
1,225.00
1944
1,100.00
1945
1,400.00
1946
1,000.00
Prior to 1940, it does not appear that petitioner's earnings were high enough to subject him to Federal income tax liability. However, despite *69 subsequent increased earnings petitioner failed to file any Federal income tax returns for the years 1940 through 1946. Consequently, in the latter part of 1947, internal revenue agent John B. Kennedy was assigned to investigate petitioner's affairs. While the investigation was in progress petitioner, on March 11, 1948, filed a Federal tax return reporting his income for 1947 as $1,285, representing alleged receipts from the sale of antiques and interest on securities. He did not include in that return his income from activity as a "commission man" prior to his arrest on January 31, 1947. In May 1948, when Kennedy asked petitioner why he failed to file returns for 1940 through 1946, petitioner answered only that he "just neglected it." Petitioner had no records of his income for the years 1940 to 1947, inclusive, so Kennedy reconstructed it in accordance with the "increase in net worth" method. That method involves arriving at income for a taxable year by finding the difference between the taxpayer's net assets at the beginning and end of the particular year and adding thereto an amount for the taxpayer's living expenses plus any gifts given by the taxpayer during the year. Kennedy's *70 computations, upon which respondent relied in determining petitioner's deficiencies, are as follows: As of December 31
1939
1940
1941
1942
1943
ASSETS: Bank Deposits: Farmers Bank Savings Acct.
$ 300.66
$1,015.37
$1,429.79
$3,436.87
$ 5,677.38
Wilmington Trust Savings Acct.
500.00
1,218.26
1,233.26
Wilmington Trust Checking Acct.
500.00
2,430.00
2,500.00
2,500.00
Property: Automobiles: Buick 1936
1,000.00
1,000.00
Mercury 1942
1,300.00
1,300.00
1,300.00
Total
$1,300.66
$2,515.37
$5,659.79
$8,455.13
$10,710.64
LIABILITIES: None
Total
0
0
0
0
0
Net Worth
$1,300.66
$2,525.37
$5,659.79
$8,455.13
$10,710.64
Previous Net Worth
1,300.66
2,515.37
5,659.79
8,455.13
Increase in Net Worth
$1,214.71
$3,144.42
2,795.34
$ 2,255.51
PLUS: Living Expenses
2,500.00
2,500.00
2,500.00
2,500.00
Net Income
$3,714.71
$5,644.42
$5,295.34
$ 4,755.51
As of December 31
1944
1945
1946
1947
ASSETS: Bank Deposits & Securities: Farmers Bank Savings Acct.
$ 7,002.38
$ 7,052.38
$ 7,102.38
$ 7,180.96
Industrial Trust Checking Acct.
102.00
202.00
202.00
300.00
Wilmington Trust Savings Acct.
1,248.26
1,263.26
1,278.26
1,278.26
Wilmington Trust Checking Acct.
2,200.00
3,636.00
2,402.80
5,749.80
U.S. Bonds
93.75
93.75
Property: Residence
14,778.13
14,778.13
Furniture
2,500.00
2,500.00
Gas Heater
250.00
250.00
Shrubbery
75.00
75.00
Automobiles: Mercury, 1942
1,300.00
1,300.00
Desoto, 1946
1,639.25
Desoto, 1947
1,955.90
Total
$11,852.64
$13,453.64
$30,321.57
$34,161.80
LIABILITIES: None
Total
0
0
0
0
Net Worth
$11,852.64
$13,453.64
$30,321.57
$34,161.80
Previous Net Worth
10,710.64
11,852.64
13,453.64
30,321.57
Increase in Net Worth
$ 1,142.00
$ 1,601.00
$16,867.93
$ 3,840.23
PLUS: Living Expenses
2,500.00
3,000.00
3,000.00
3,000.00
Gifts: 4/29/47 Plymouth Club Coupe, Jef-
ferson Jr., (Son)
1,470.20
4/22/46 Mercury Club Coupe, George
(Son)
1,765.69
Net Income
$ 3,642.00
$ 4,601.00
$21,633.62
$ 8,310.43
*71 The bank accounts and automobiles (except those given to petitioner's sons) were in petitioner's name, but the title to the house purchased in 1946 was in the names of petitioner and his wife jointly. Petitioner paid for the house in cash, some of which came from his bank accounts and some of which he had on hand. Petitioner does not contest respondent's determination of his net income, based on the above schedule of computations, for the tax years 1940 to 1945, inclusive. Nor does he contest the 25 per cent delinquency penalties determined for those years under section 291 of the Code. Those matters, consequently, are not in issue here. Petitioner, however, does urge that the income determined for 1946 and 1947 is incorrect and excessive. Petitioner contends that $15,000 worth of the assets purchased in 1946 and $2,000 worth of the assets purchased in 1947 were paid for not from current income but from a sum of $17,000 which he had been saving in a desk drawer in his home since 1937, and half of which belonged to his wife. Petitioner maintains, therefore, that respondent erred to the extent that the computed tax deficiencies were based on the inclusion of $15,000 and $2,000 *72 in petitioner's reconstructed income for 1946 and 1947, respectively. Petitioner adds that the 25 per cent delinquency penalty determination for 1946 should be reduced to conform with the corrected tax deficiency for that period. After a consideration of the record we find as facts; (1) that petitioner did not have $17,000 saved in a desk drawer of his home in 1937; (2) that petitioner did save approximately $13,000 from income earned between 1937 and 1945, inclusive, which savings were not deposited in any bank nor used to purchase assets during that period and, therefore, were not discovered by internal revenue agent Kennedy nor included in Kennedy's computation of petitioner's net worth and corrected net income; and (3) that $11,000 of those savings was used by petitioner in part payment of the following property which he and his wife purchased in 1946: Residence
$14,778.13
Furniture
2,500.00
Gas Heater
250.00
Shrubbery
75.00 Inasmuch as we find that $11,000 of the cash used by petitioner in the purchase of the foregoing items was accumulated by petitioner in yours prior to 1946, and not in 1946, we find that his correct net income for 1946 is $10,633.62, *73 instead of the $21,633.62 which the Commissioner has determined. We also find that $2,000 of the funds used by petitioner in the purchase of assets in 1947 was from savings in years prior to 1946, and we find that petitioner's correct net income for 1947 was $6,310.43, instead of the $8,310.43 as determined by the Commissioner. On February 15, 1950, an Information was filed against petitioner in the United States District Court for the District of Delaware charging him with willful failure to file a return for the taxable year 1946. Petitioner entered a plea of guilty to the Information and was fined $1,000. In 1951, petitioner and his wife entered into a business agreement with the Rupert Construction Co. whereby the latter was to build two houses for them at cost in Sessex County, Delaware. If they were successful in selling the houses they were to be given an agency to sell them in that county. The title to the land on which the houses were built was in the names of petitioner and his wife jointly. The venture was unsuccessful but the houses were eventually sold and the net proceeds deposited with the Government pending determination of petitioner's tax liability. For each *74 of the taxable years 1940 to 1947, inclusive, the deficiency was due, in whole or in part, to fraud with intent to evade tax. The forgiveness provisions of the Current Tax Payment Act of 1943 are not applicable with respect to the deficiencies and penalties for the 1942 taxable year because of petitioner's fraud. Opinion BLACK, Judge: The first question to be considered is whether respondent erred in his deficiency determinations for the taxable years 1946 and 1947, and erred in the amount of the delinquency penalty determined for 1946. Respondent's authority to compute petitioner's net income for the years in issue by the increase in net worth method is clear, and no question has been raised in regard thereto. Section 41, Internal Revenue Code; Regulations 111, section 29.41-1; Louis Halle, 7 T.C. 245, affd. 175 Fed. (2d) 500 (C.A. 2), certiorari denied 338 U.S. 949. Nor does petitioner contest that a delinquency penalty should be assessed for his failure to file a return for the 1946 tax year. Section 291(a) of the Code; Regulations 111, section 29.291-1. In that regard petitioner asserts only that the amount of *75 the penalty (which is 25 per cent of the deficiency) must be reduced to conform with what he contends is the correct deficiency for 1946. Consequently, the delinquency penalty issue is merely a matter of mathematics and will be controlled by our decision as to petitioner's deficiency. The burden of proving that respondent erred in his deficiency determinations for 1946 and 1947 rests upon petitioner. Joseph V. Moriarty, 18 T.C. 327. Petitioner contends that respondent's computation of petitioner's net income for those years was faulty in that it failed to take into account $17,000 which he and his wife had saved by 1937. Petitioner maintains that $15,000 of that sum was expended on the assets purchased in 1946, and $2,000 was expended on the assets purchased in 1947. It is true, as petitioner argues in his brief, that a correct determination of net worth at the beginning of the taxable period is an essential condition to reconstruction of income by the net worth increase method. United States v. Fenwick, 177 Fed. (2d) 488 (C.A. 7). Whether or not petitioner did save $17,000 by 1937, had it immediately prior to 1946, and expended it on assets in 1946 *76 and 1947, is a question of fact. As mentioned above, the burden of proving that fact rests upon petitioner. A consideration of the record reveals that between 1917 and 1937, the period during which petitioner claims he saved the $17,000, petitioner was neither earning nor expending much money. He lived with his wife and two children in a house that had neither plumbing nor running water and for which he paid an average rent of $6 per month. He bought his groceries and sundries at approximately cost from his uncle's store, and contributed to the support of his widowed mother. Petitioner claims that the $17,000 he accumulated was kept in cash in a desk drawer in his house. No one, not even his wife, knew about the hiding place even though petitioner stated that he and his wife had agreed, when they were first married, to equally share all the money he made. None of the $17,000 was ever deposited in banks, testified the petitioner, because he had no faith in them. However, starting in 1939, after he found out that bank deposits were insured, he did put some of his money into accounts, though not the $17,000. We are not required to, nor do we in this case, give credence to petitioner's *77 story that he had accumulated $17,000 prior to the year 1937. As stated in Carmack v. Commissioner, 183 Fed. (2d) 1 (C.A. 5), certiorari denied 340 U.S. 875; "the Tax Court was not bound to believe or to accept the uncontradicted testimony of taxpayer and his wife, where such testimony patently appears highly improbable or manifestly unreasonable." While we are unable to believe petitioner's story that he accumulated $17,000 in cash prior to the year 1937 and that he kept this money until 1946 and 1947 when it was used to pay in part for some of the property which respondent has included in petitioner's net worth statement, we do believe that a considerable amount of the cash which the petitioner used to purchase these properties was accumulated in years prior to 1946. We think it must have been so. By use of the increase in net worth method, respondent has arrived at a figure of $21,633.62 net income for 1946 and $8,310.43 net income for 1947. These figures are beyond all reasonable probability, we think. The evidence shows that petitioner was operating on about a five per cent commission. Respondent's figures, if correct, would mean that petitioner did *78 over $400,000 worth of business in 1946 and over $165,000 worth of business in 1947. Petitioner described his method of operation. It was not contradicted. No one worked for him. He was "small time." He devoted a good part of each day to paying off betters. It is unrealistic to assume that one operating on such a small scale as petitioner could have done $400,000 worth of business in 1946. That would also be far out of line with respondent's determination of his net income in prior years. As to 1947, it seems to be uncontested that petitioner was in the bookmaking business for only one month in 1947. That was the month of January. He was arrested at the end of that month for his illegal operations and the uncontradicted evidence is that he never engaged in that business after that date. Since petitioner was operating only for the month of January 1947, it seems altogether improbable that he could have earned the amount of income which the Commissioner has determined for 1947. After a careful review and consideration of all the evidence in the record we have concluded that petitioner's net income for 1946 was $10,633.62, instead of $21,633.62 as determined by the Commissioner and *79 $6,310.43 for 1947, instead of the $8,310.43 as determined by the Commissioner. These amounts have been embodied in our Findings of Fact. The delinquency penalty for 1946 must be revised to give effect to our determination of petitioner's net income for 1946. Fraud Penalties The remaining question is whether petitioner is guilty of fraud in failing to file returns for the years 1940 through 1946, and in understating his net income in the return filed for 1947. The provisions of the Internal Revenue Code applicable to this question are printed in the margin.[1] Respondent's determination of fraud places upon him, in a civil suit, the burden of proving fraud by clear and convincing evidence. Fraud is not negligence, however gross, but is intentional wrongdoing for the purpose&of evading a tax believed to be owing. Wiseley v. Commissioner, 185 Fed. (2d) 263 (C.A. 6); Mitchell v. Commissioner, 118 Fed. (2d) 308 (C.A. 5); Rogers v. Commissioner, 111 Fed. (2d) 987 (C.A. 6), In William W. Kellett, 5 T.C. 608, we said: "What constitutes fraud is a question of fact which frequently requires a nicely balanced judgment to answer. * * *80 * The conclusion must be reached not on isolated bits of testimony, but on the whole record. * * *" See also E. S. Iley, 19 T.C. 631; L. Schepp Co., 25 B.T.A. 419. In Wallace H. Petit, 10 T.C. 1253, we said at page 1257: "Because direct and clear-cut proof of fraud is seldom available, it must be established by a full consideration of the records and testimony offered, the appearance and manner of the witnesses, conduct of the taxpayer, and all conditions and circumstances surrounding the transactions which produced the disputed income." *81 Careful consideration of the record in the instant case convinces us that petitioner's actions were motivated by a fraudulend intent to evade taxes. His failure to file tax returns for the years 1940 to 1946, inclusive, and his understatement of income for 1947, including therein $32 as interest and $1,253 as income from the sale of antiques and including nothing from his horse betting operations for the month of January, is alone compelling evidence, unless satisfactorily explained, to sustain respondent's burden of proving fraud. Rogers v. Commissioner, supra; Estate of Joseph Nitto, 13 T.C. 858, appeal dismissed (C.A. 7) July 21, 1950. By way of explanation, however, petitioner claims that the only reason he failed to file returns from 1940 through 1946 was because he did not believe it was necessary to do so. Petitioner states that he knew there was a Federal income tax but did not realize he was earning enough money to be required to pay such tax, especially since his income was so low prior to 1940 that he was not subject to the tax. To further indicate that his dereliction was not motivated by fraud, he points to the fact that he filed Delaware *82 income tax returns for 1941 through 1946, explaining that he knew Delaware required such returns and maintaining, therefore, that he would have filed Federal returns if he thought it was required by law. We think that a more likely explanation than the one which petitioner gave in his testimony at the hearing was that he knew that he was engaged in an illegal business and did not want to disclose it. Therefore, he refrained from filing any income tax returns. We think that was, at least, one of his purposes as well as his general purpose of evading the payment of income taxes. We find it difficult to give credence to petitioner's explanation as to why he filed no returns from 1940 to 1946, inclusive, especially in view of the fact that when petitioner was questioned by internal revenue agents in May 1948, he stated that he did not file returns because he "just neglected it." The record leads but to one conclusion, we think - respondent has successfully sustained his burden of proving fraud. Petitioner's protestations of innocence are not supported by the evidence and his explanations are not plausible and convincing. Our statement in M. Rea Gano, 19 B.T.A. 518, 533, *83 accurately disposes of the fraud question in this case: "A failure to report for taxation income unquestionably received, such action being predicated on a patently lame and untenable excuse, would seem to permit of no difference of opinion. It evidences a fraudulent purpose." Decision will be entered under Rule 50. Footnotes
1. SEC. 293. ADDITIONS TO THE TAX IN CASE OF DEFICIENCY. * * *
(b) Fraud. - If any part of any deficiency is due to fraud with intent to evade tax, then 50 per centum of the total amount of the deficiency (in addition to such deficiency) shall be so assessed, collected, and paid, in lieu of the 50 per centum addition to the tax provided in section 3612(d) (2). SEC. 1112. BURDEN OF PROOF IN FRAUD CASES. In any proceeding involving the issue whether the petitioner has been guilty of fraud with intent to evade tax, the burden of proof in respect of such issue shall be upon the Commissioner.↩