Glen Caldwell and Geraldine Caldwell v. Commissioner.
Caldwell v. Commissioner
Docket No. 5980-64.
United States Tax Court
T.C. Memo 1966-215; 1966 Tax Ct. Memo LEXIS 69; 25 T.C.M. (CCH) 1117; T.C.M. (RIA) 66215; September 29, 1966
William C. Hague, for the petitioners. Charles H. Powers, for the respondent. TANNENWALD
Memorandum Findings of Fact and Opinion TANNENWALD, Judge: This case involves deficiencies in petitioners' Federal income tax for the calendar years 1960 and 1961 arising out of the alleged failure to report certain income and the assertion by respondent that petitioners' underpayments were due to fraud, thereby making them liable for additions to tax under section 6653(b) [1] as follows: Deficiencies
Year
Income tax
Addition to tax
1960
$677.50
$338.75
1961
878.44
450.49 *
Findings of Fact Some of the facts are stipulated and are found accordingly. Petitioners reside at 18620 Wexford Street, Detroit, Michigan. They filed Federal income *70 tax returns for the years in question with the district director of internal revenue, Detroit, Michigan. Geraldine Caldwell is a party to this proceeding only by reason of having filed a joint return with her husband. Any reference herein to "petitioner" shall be deemed to refer to Glen Caldwell. Petitioners' returns as filed showed refund claims of $130.89 and $218.20, respectively. The only source of income shown on these returns was from the City of Detroit. The gross income as reported by petitioners and the amount of unreported income as claimed by respondent is as follows: Gross income
Unreported
reported
income claimed
Year
by petitioners
by respondent
1960
$6,426.77
$3,105.00
1961
6,429.75
4,020.00
During the taxable years in question petitioner was employed by the Department of Public Works, City of Detroit, as a foreman in its Incinerator Division. Prior to February 1960, he was the foreman at the 24th Street Incinerator. Commencing in February 1960, petitioner was the foreman of the day shift at the St. Jean Incinerator. From August 1960 he was the foreman of the afternoon shift, 4:00 p.m. to midnight, of the St. Jean Incinerator. On *71 the afternoon shift petitioner also operated the scales. During the period in question, petitioner had 25 or 26 employees working under his supervision. The St. Jean Incinerator was used by rubbish haulers to dispose of rubbish. Some of the business concerns which used the St. Jean Incinerator during the taxable years were Winkler Sanitation Co., A. N. Reitzloff Co., Anco Industries, Inc., Variety Trucking Co., Fairall Trucking Co., Kramer Waste Material Co., M. and L. General Trucking Co., and Vanguard Trucking Co. These firms paid charges imposed by the City of Detroit for using the facilities at the incinerator. Petitioner entered into arrangements whereby business concerns using the incinerator made extra payments in return for special privileges. The additional income which respondent has determined that petitioner received derives from these payments. The payments were systematic and continuous during the taxable years involved herein. Petitioner received checks, payable to cash, from Winkler Sanitation Co. and Anco Industries, Inc., evidencing some of such payments, which aggregated $1,392 in 1960 and $1,880 in 1961. Some of these checks were delivered by petitioner to *72 Barbara Napper Jenkins as repayments of loans to petitioner. A printed Treasury Department Form 872 designated "Consent Fixing Period of Limitation Upon Assessment of Income and Profits Tax" was timely executed and filed and extended to September 30, 1964 the period for assessment of tax for the year ended December 31, 1960. Respondent's 90-day notice of deficiency was mailed to petitioners on September 23, 1964. Petitioner received additional unreported income for each of the taxable years 1960 and 1961 in amounts equal to or greater than determined by respondent. Petitioners' understatement of income in each of the taxable years was due to fraud. Opinion Petitioner was the sole witness on his behalf. His testimony consisted for the most part simply of negative answers to general questions by his counsel as to whether he had received the particular sums alleged by respondent to have been received by him from named business concerns dumping rubbish at the St. Jean incinerator. Against petitioner's testimony, respondent produced two witnesses (Louis Winkler, the owner of the Winkler Sanitation Co., and Charles Anchill, president of Anco Industries, Inc.) who testified *73 as to payments which had been made to petitioner for special privileges at the incinerator and identified specific checks and check register entries as representing such payments. A third witness, Barbara Napper Jenkins, testified that petitioner had delivered some of these checks to her by way of repayment of loans. Finally, a grocery store owner (Salhaney) testified that he had cashed certain of these checks for petitioner. Petitioner's endorsement appeared on some 32 checks payable to cash from the Winkler Sanitation Co. and Anco Industries, Inc. in varying amounts ranging from $15 to $146. Petitioner sought to explain these endorsements by asserting that the checks came into his hands during the course of operations of a check-cashing service which he claimed he conducted. Petitioner, however, offered no satisfactory explanation as to why he obtained the endorsements of some of the persons for whom he claimed to have cashed checks but not others. Nor were any of the persons otherwise identified beyond the names which were written on the checks. Moreover, it is significant that petitioner's tax returns disclose no income from, or other evidence indicative of, any such service. *74 We find petitioner's testimony not worthy of belief. The evidence clearly reveals systematic and continuous payments by rubbish hauling firms for special privileges at the incinerator and the receipt of such payments by petitioner. On the basis of the testimony and the entire record herein [2] and recognizing that the burden of proof is on petitioner (Rule 32, Tax Court Rules of Practice), we hold that he received additional unreported income in amounts at least as large as those determined by respondent. With respect to petitioner's liability for additions to tax due to fraud under section 6653(b), respondent of course has the burden of proof (section 7454(a)) and he must establish fraud by clear and convicing evidence. Luerana Pigman, 31 T.C. 356, 370 (1958); *75 Arlette Coat Co., 14 T.C. 751 (1950). None of respondent's witnesses testified directly to the fraud issue. Indeed, it would have been difficult, if not impossible, for them to do so, for this involves the petitioner's intention, something these witnesses would hardly be in a position to know. It is axiomatic that direct proof of fraud is seldom possible and that generally a finding of fraud must be based on the taxpayer's conduct in relation to the underlying transactions. See Leon Papineau, 28 T.C. 54, 57-58 (1957). Wholly apart from the amount of unreported income found to have been received by petitioner because of his failure to sustain his burden of proof, we have found that he in fact received sizeable amounts for enabling rubbish hauling firms to obtain special privileges. Petitioner received regularly and systematically during the period in question checks in varying amounts ranging from $15 to $146. The amounts thus received aggregated $1,392 in 1960 and $1,880 in 1961. They were substantial in relation to petitioner's reported gross income - 22 percent in 1960 and 29 percent in 1961. In each of these two years, petitioner filed income tax returns *76 showing an overpayment and requesting a refund. These circumstances are strongly indicative of fraud. Schroeder v. Commissioner, 291 F. 2d 649 (C.A. 8, 1961), affirming a Memorandum Opinion of this Court; Leon Papineau, supra; Estate of Joseph Nitto, 13 T.C. 858 (1949). Respondent is not required to prove that every cent of the amount determined by him to have been received by the taxpayer was tainted by fraud. Section 6653(b), by its very terms, and the decided cases establish that if a part of the deficiency is due to fraud the addition to tax attaches to the entire deficiency. Arlette Coat Co., supra; see Estate of W. Y. Brame, 25 T.C. 824 (1956), affirmed per curiam 256 F. 2d 343 (C.A. 5, 1958). We are convinced on the basis of the entire record that respondent has discharged his burden of proof on the fraud issue. Cf. Nazzareno D. Cesanelli, 8 T.C. 776 (1947). Decision will be entered for the petitioners for the taxable year 1959. Decision will be entered for the respondent for the taxable years 1960 and 1961. Footnotes
1. All references are to the Internal Revenue Code of 1954. The notice of deficiency and the petition also covered a small deficiency and addition to tax for 1959, but at the trial respondent conceded that there is no deficiency for that year.↩
*. Reflects an adjustment in respect of tax withheld on wages.↩
2. We have eliminated from our consideration any evidence that petitioner may have been convicted of bribery. The evidence is meager as to the criminal charges against the petitioner, the conviction had been appealed at the time of the trial herein, and the probative value of such conviction on petitioner's liability for the deficiency asserted or the additions to tax on account of fraud would at best be marginal.↩