THE LORRAINE CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 61329.   Promulgated February 20, 1936.

*George Bouchard, Esq.,* for the petitioner.
*Dewitt M. Evans, Esq.,* for the respondent.

OPINION.

TRAMMELL:[1] With respect to the issue involving limitations, the respondent concedes in his brief that unless we find for him on the question of fraud the deficiencies are barred.

On the question of fraud, the respondent, who has the burden of proof, now relies on only two classes of items, namely, royalties from the Crowell license agreement and deductions for the expenditures for whiskey.

The testimony of Summers, who was the secretary and treasurer of the petitioner during the years in controversy, shows that all the net profit realized by the petitioner for each year from the manufacture and sale of the device covered by the license agreement entered into between the petitioner and Crowell was charged to profit and loss on the books of the petitioner as royalties paid to Lorraine, its president, and his personal account on the petitioner's books was credited accordingly. The amounts of such charges and credits were stipulated by the parties and are not in controversy. The controversy is as to the deductibility of the amounts by the petitioner. The respondent contends that, since the license to manufacture and sell granted under the agreement with Crowell was granted to the petitioner, the profit realized by the petitioner from operations thereunder was profit belonging to the petitioner and was taxable to it. The petitioner contends that, after it entered into the agreement with Crowell and before any profit was realized from operations thereunder, it entered into an agreement with Lorraine whereby it was to manufacture the device covered by the Crowell patents, receiving therefor the cost of materials used plus $3 per hour for the time each of its employees was engaged in the manufacture of it, and that whatever profits were derived from the sale of the device were to belong to Lorraine and losses that resulted were to be borne by him. In support of this contention the petitioner relies on certain testimony of Lorraine which was substantially to this effect. Lorraine, however, further testified that the manufacture of the device by the petitioner, under these conditions, was taken up by him with the other stockholders of the petitioner, including William Lacy, and was agreed to by them, that such agreement was made at a meeting of the stockholders of the petitioner at which William Lacy among others was present, that such action of the stockholders was recorded in the minute book, that the directors of the petitioner authorized an assignment to him of the license agreement with Crowell, and that this action was also recorded in their minute book. Neither the minutes of the meeting of the petitioner's stockholders respecting their action as testified to by Lorraine were offered in evidence nor was there offered

---

[1] This decision was prepared during Mr. Trammell's term of office.

in evidence the minutes of a meeting of its board of directors showing their authorization of the assignment to Lorraine of the license agreement, as he testified.

William Lacy was a stockholder in the petitioner during 1926, 1927, and until some time in 1928 when he sold his stock to Lorraine. His holdings amounted to about 12½ percent of the petitioner's outstanding stock. Lacy was called as a witness by the respondent and testified that he knew nothing about the license agreement between Crowell and the petitioner, that he knew nothing about the manufacture of the device thereunder or that Lorraine was taking the profit therefrom for himself, that he never entered into any agreement with Lorraine respecting the profits and losses from the device, and that he had no recollection of ever discussing the license agreement with Lorraine or of ever being present at a meeting of the stockholders of the petitioner at which they agreed that Lorraine would receive the profit from the device and not the petitioner.

The license agreement, an executed copy of which was placed in evidence, clearly shows that it was one between the petitioner and Crowell and not one between Lorraine personally and Crowell. The agreement specifically provided against the petitioner's assignment of its interest therein without the consent of Crowell. There is nothing in the record to indicate that Crowell was ever asked to or did give his consent to the petitioner's assignment of it to Lorraine. While Lorraine testified that the petitioner's board of directors authorized the assignment of the license agreement to him by the petitioner, his testimony is not supported by any minutes of the meeting of the directors substantiating his testimony, nor is there any showing that such assignment, if authorized by action of the directors, was ever made.

The only evidence in the record to support the existence of an agreement between the petitioner and Lorraine whereby the latter was to have the profits and bear the losses from the device is the testimony of Lorraine. Much of his testimony was contradicted by a stockholder of the petitioner who owned a substantial amount of its stock. In view of this and of the fact that Lorraine stated that the agreement was recorded in the minutes of a meeting of the petitioner's stockholders, the question arises as to why such minutes were not offered in evidence. No explanation is offered by the petitioner for its failure in this respect. We think under the circumstances here presented the only logical conclusion to be reached from the petitioner's failure in this respect is that there were not any minutes containing such an agreement. The revenue agent who made an examination of the petitioner's books for the years in controversy testified that he was unable to find any basis for the petitioner's

action in charging the amounts here in question to royalties paid and crediting them to Lorraine's personal account. From the record before us we are unable to find that the alleged agreement was ever entered into between the petitioner and Lorraine and therefore conclude that such agreement never existed. The profits realized by the petitioner from the device, therefore, were income taxable to it and were improperly taken as deductions.

The next question is whether the deduction of the amounts by the petitioner was due to fraud with intent to evade tax. Summers, who was secretary and treasurer of the petitioner during the years in question, testified that the amounts were entered on the petitioner's books as royalties paid to Lorraine, pursuant to instructions given by Lorraine. Nowhere in the record is the correctness of this statement disputed or denied. To justify the deduction of the amounts the petitioner has relied on an alleged agreement between it and Lorraine. The evidence not only fails to establish the making of such agreement but tends to indicate that the allegation as to its having been made is a fabrication. The amount of $16,837.20 deducted for 1926 is approximately two and one-half times the amount of net income reported by the petitioner for that year. The amount of $26,152.83 deducted for 1927 is more than nine times the amount of net income reported by the petitioner for that year. The deduction of $24,272.03 taken for 1928 is approximately one third of the amount of the net income reported for that year.

In extenuation of this situation the petitioner relies on the testimony of Lorraine that he reported the amounts as income in his individual returns for the respective years, hence the Government has not been deprived of the tax thereon. This does not greatly help the petitioner's position. In the hands of the corporation the amounts were subject to a normal tax at the rate of 13½ percent for 1926 and 1927 and at 12 percent for 1928. If they had been the income of Lorraine as a result of the alleged agreement the highest rate of normal tax on them would have been only 5 percent for each of the years. Irrespective of whether the amounts came into Lorraine's hands either by way of dividends from the petitioner or as a result of the alleged agreement they would have been subject to the same graduated rates of surtax. By the amounts having been treated as they were by the petitioner the Government was deprived of normal tax on them by at least the difference between the rates of 5 percent and 13½ percent for the years 1926 and 1927, and by the difference between the rates of 5 percent and 12 percent for 1928. No agreement having existed between the petitioner and Lorraine during the years in controversy which warranted the deduction of the amounts by the petitioner, we think under the circumstances pre-

sented the action of the petitioner was fraudulent and with an intent to evade tax. The action of the respondent in determining the 50 percent penalties is accordingly sustained.

The pertinent portions of the applicable revenue acts provide that if any part of the deficiency is due to fraud with intent to evade tax then 50 percent of the total amount of the deficiency shall be assessed as a penalty. While our opinion as to fraud with respect to the issue above discussed would be sufficient on which to base the fraud penalty, there is in addition thereto the question of the deduction claimed as an ordinary and necessary expense of expenditures made for whiskey for beverage purposes. These expenditures for this purpose were disguised in the form of commissions and traveling and entertainment expenses. We do not think that such expenditures are allowable deductions even though the purpose was entertainment. The expenditures were for an illegal purpose, that is, to acquire possession of alcoholic liquor for beverage purposes contrary to Federal statute. It appears that a portion of the liquor was consumed by employees. While we think that the entire expenditures for illegal liquor are not allowable deductions as ordinary and necessary expenses of carrying on a trade or business, at least that portion of the expenditures for liquor which was consumed by employees and for which a deduction was claimed in the disguised form of commissions and traveling and entertainment expenses constituted fraud with intent to evade the tax.

Since we have found that the petitioner's returns were fraudulent with intent to evade tax, the question of limitations is decided adversely to the petitioner.

The petitioner offered no evidence respecting the remaining assignments of error and makes no contention relative to them in its brief. The action of the respondent with respect to them is sustained for lack of evidence.

Reviewed by the Board.

*Decision will be entered under Rule 50.*